PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH PURSER, Relator, *v.* ROBERT E. CAHILL, as Mayor, and ROSWELL S. GEORGE and Others, as Commissioners Constituting the Council of the City of Watertown, Defendants.

Supreme Court, Jefferson County, November, 1922.

Municipal corporations — adoption by city of Watertown of plan " C," Optional City Government Law — government by manager and council — city must continue under said plan for at least four years — petition for return to aldermanic government is irregular — mandamus will not be granted to compel submission of question to electorate.

The Optional City Government Law (Laws of 1914, chap. 444) by which seven plans of city government are proposed in no way repealed, modified or affected the broad grant of powers theretofore given to the citizens of the city by the General City Law (Consol. Laws, chap. 21) among which was the power to regulate the manner of transacting the city business and affairs (General City Law, art. 2-a, § 20, subd. 19), but on the other hand clarified and enlarged it giving them ample authority to adopt either an aldermanic or manager form of government, as they might desire and elect.

The city of Watertown on November 15, 1915, while operating an aldermanic form of government under its charter (Laws of 1879, chap. 760, as amended by later statutes in force May 1, 1906, and other acts amendatory thereof and supplemental thereto) by a majority vote of the electors of the city adopted a government of limited council and a city manager defined as plan " C " in the Optional City Government Law. This plan which went into full force and effect January 1, 1920, when the officers provided for in said act commenced their terms of office, vested all the legislative powers of the city in a board composed of a mayor and four councilmen known as the council of the city of Watertown.

Upon presentation of a petition for the submission to the vote of the electorate, at a date to be designated by the city council, of the questions of the discontinuance of the then form of government and a return to that existing prior to January 1, 1920, the city council, acting upon the advice of its corporation counsel, that it was without power to act, adopted a resolution declaring the petition out of order and laid it on the table. Upon dismissing a motion for an order

of mandamus requiring the mayor and council to reconvene and designate a day for the holding of a special election to ascertain the will of the electors regarding the questions presented by the petition, *held*, that the provisions of the old charter of the city except those inconsistent with the Optional City Government Law are still in force and effect, and by section 8 of that statute so continue until superseded by the passing of ordinances relating to the subject-matter therein specified.

There being no provision of the old charter nor ordinance under the new allowing the citizens to vote on any proposition except the financial one, and the only way a change can be effected is by the adoption of one of the seven plans set forth in the Optional City Government Law, one of which (plan " G ") would allow a return to the aldermanic form of government under the Second Class Cities Law (Consol. Laws, chap. 53), the petition here is irregular in that it calls for the submission of a proposition that could be of no legal force and effect if adopted.

The city having on January 1, 1920, adopted one of the plans set forth in the Optional City Government Law must under section 25 of article 2 of that statute continue under that plan for a period of at least four years after the commencement of the terms of office of the officials elected thereunder, and no petition for a change of plan can be legally presented prior to July 1, 1923, and the city council was justified in its refusal to act on the petition presented on the ground that it was improper, inoperative and void.

MOTION for an order of mandamus.

*N. F. Breen,* for the motion.

*Francis K. Purcell,* corporation counsel, opposed.

MARTIN, LOUIS M., J. Prior to January 1, 1920, the city of Watertown was governed by what is known as the aldermanic form of city government, which had been in force and effect since its incorporation in or about the year 1869 and was operating under an act of the legislature constituting its charter, the latest enactment of the same being chapter 760 of the Laws of 1879, as amended by subsequent acts of the legislature and in force May 1, 1906, and other acts amendatory thereof and supplemental thereto.

On November 15, 1915, the following question was submitted to the qualified electors of said city, under the law known as the Optional City Government Law, viz.: " Shall the City of Watertown adopt the simplified form of government, defined as Plan ' C,' a government by limited council with City Manager? " This proposition was adopted by a majority vote and the said plan went into full force and effect January 1, 1920, when the officers provided for in said act commenced their terms of office. This plan vested all the legislative powers of the city in a board known as the council of the city of Watertown, said board being composed of a mayor and four councilmen. The city was operating under this form of government at the time of the presenting of the

petition hereinafter referred to and is at the present time. A petition was filed with the city clerk, signed by 1,530 electors of said city and presented to said council September 11, 1922, requesting that the following question or proposition be submitted to a vote of the electorate at a date to be fixed and designated by said council: " Shall the City of Watertown discontinue, after December 31, 1923, the present form of City Government, known as Plan ' C,' of the Optional City Government Law, and return to the form of government existing prior to January 1st, 1920? "

This petition was considered by the council on September 11, 1922, and the opinion of the corporation counsel requested as to the authority of the governing board of the city to act in the premises, which opinion was received September 20, 1922, and was to the effect that the council had no power to act and a resolution was adopted declaring the petition out of order and placing the same on the table.

This proceeding was commenced by a petition of the relator, Joseph Purser, resident citizen, taxpayer and voter of the said city of Watertown, duly presented to the Special Term of the Supreme Court held at said city September 30, 1922, the petitioner praying for a mandamus order requiring the mayor and city council to reconvene and designate a day for the holding of a special election to ascertain the will of the electors regarding the questions presented by the said petition hereinafter filed with said council. By an order to show cause duly granted at said term the same was made returnable before the Special Term of the Supreme Court held at Utica, October 7, 1922. Answering affidavits having been duly filed, the matter was regularly brought on for argument before the court at an adjourned term thereof held at the city of Watertown October 9, 1922, and hearing held thereon. Two major questions present themselves by the petition and answering affidavits herein:

(a) Can a city, once having adopted this optional form of city government, return to the form of government that was in existence before said adoption by a majority vote of electors of such city?

(b) Was the petition heretofore presented to the council September 11, 1922, presented before action could be taken thereon under section 25 of article 2 of the Optional City Government Law?

Discussion of the first proposition presented involves not only this particular act, but the history of the state in relation to cities and townships, the Constitution of the state and the General City Law. New York state was originally a state of local self-government in its broadest terms; cities and townships were first created as self-government communities, the people meeting in their town

or city halls and enacting such local and simple rules as the necessity required; there was no so-called county government. The state government exercised but very limited control over these municipalities. The supervisors of towns met at a common center simply to provide for a common court for the several adjacent towns, for a common jail, and other similar joint enterprises. The aldermen of the cities had a like power and exercised it locally and for the common good. They were self-governing communities, jealous of their rights, surrendering as little as possible to the law-making body of the state, and while the state, at many periods of our history, endeavored to and practically did take over this power to a large degree, it has, in recent years, by constitutional amendments and legislative enactment, returned to them, in a very great measure, local self-government. Under section 2 of article 12 of the Constitution of the state, acts of the legislature affecting any individual city, before final action thereon, must be submitted to the mayor thereof for acceptance, or returned without acceptance by said city. By chapter 21 of the Consolidated Laws, known as the General City Law, this power of self-governing was specifically given to the cities of the state. Section 19 of article 2A reads as follows:

" General grant of powers. Every city is granted power to regulate, manage and control its property and local affairs and is granted all the rights, privileges and jurisdiction necessary and proper for carrying such power into execution. No enumeration of powers in this or any other law shall operate to restrict the meaning of this general grant of power, or to exclude other powers comprehended within this general grant."

Among the powers successfully granted was the power " to regulate the manner of transacting the city's business and affairs." Gen. City Law, art. 2-A, § 20, subd. 19.

The Optional City Government Law in no way repealed, modified or affected this broad grant of power heretofore given to the citizens of a city, but on the other hand clarified and enlarged it, giving them ample authority to adopt either an aldermanic or manager form of government, as they may desire and elect.

The old charter of the city of Watertown is in full force and effect at the present time, except in so far as any provisions thereof are inconsistent with the Optional City Government Law. They continue in full force and effect until superseded by the passing of ordinances relating to the subject-matter therein specified. Optional City Government Law, § 8; *Cleveland* v. *City of Watertown,* 222 N. Y. 159.

The situation, therefore, is that the city of Watertown is now acting under what might be classed as a dual charter — the old one in effect where the new one does not step in and super-

sede, either by the act itself, or new ordinances taking the place of old.

By accepting the new plan of government the city accepted a new charter in place of the one it formerly had in force and effect. *Cleveland* v. *City of Watertown, supra,* 169.

Having accepted a new charter at the hands of the legislature it can only procure another by returning to the same law-making power that granted the first, if it intends to continue to act under a separate and distinct charter for its own use, entirely independent of the other cities of the state; a vote in the affirmative by a majority of the electorate on this proposition submitted to the council will not restore the old charter in its entirety and would result in confusion and loss of an organized city government with power to act.

The trend of legislation during the past few years has been to induce the cities of the state to act under uniform charters with broad power of local self-government and thus avoid the necessity of legislative action on special city bills for old and obsolete charters, thus carrying out to the fullest extent local self-government. The Second Class Cities Law (Consol. Laws, chap. 53) provides a liberal and comprehensive scheme for the government of the cities of the state under the aldermanic form, and should the citizens of Watertown desire to return to that form and have a mayor and other elective major officers and a board of aldermen, they have ample authority to do so under the optional city government plan now in force and effect. Under the Optional City Government Law there are seven plans of city government proposed. This city is now operating under plan " C; " section 25 of the act provides ample authority to change that plan to one of the others mentioned and set forth. Plan " G " under the act provides that any city operating under this act can adopt the provisions of the Second Class Cities Law of the state and when adopted the power of government of the city shall be exercised as in said Second Class Cities Law provided. This gives the city of Watertown ample authority at the proper time and under the present act to return to the form of government it had heretofore, using the procedure prescribed in the present law under which the city is acting. There is no provision in the old charter of the city nor ordinance under the new to allow the citizens to vote on a proposition except a financial one, and the only way a change can be effected is by the adoption of one of the plans set forth in this act. Plan " G " would allow a return to the aldermanic form of government under a very favorable charter, viz., the Second Class Cities Law. The conclusion, therefore, is that the petition heretofore presented is

irregular and calls for the submission of a proposition that could not be of any legal force and effect if adopted.

The second question referred to involves the time of presentation of the petition to make it effective and in which the council would be obliged to act. Section 25 of article 2 of the Optional City Government Law provides in substance that when a city adopts one of the plans therein set forth it must continue under that plan for a period of at least four years after the commencement of the terms of office of the officials elected thereunder; in this case four years from January 1, 1920. There is also a provision that no petition proposing a different plan shall be presented during a period of three years and six months after such adoption. Under section 23 of the act the same is considered adopted when the terms of office of the officers provided for shall have commenced. The adoption of plan "C" by the city was, therefore, January 1, 1920, and no petition for a change of plan could be legally presented prior to July 1, 1923. It follows, therefore, that while at the proper time it would be the duty of the council to act on a proper petition to change to any other plan mentioned and set forth in the act, it is at the present time justified in its refusal, on the ground of the improper petition, and on the further ground that the petition was presented during a period of three years and six months after the adoption by the city of Watertown of the plan known as plan "C" of the Optional City Government Law, and the said petition is, therefore, inoperative and void. Motion for mandamus order dismissed, without costs.

An order may be prepared accordingly and if not agreed upon, settlement by the court on a two days' notice.

Ordered accordingly.